UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

          v.                                                 DECISION AND ORDER
                                                                    09-CR-329

THAMUD ELDRIDGE, et al.,

                         Defendants.

---

## INTRODUCTION

Before the Court is the Government's third motion for removal of court-appointed second counsel for the three remaining defendants in this case involving Racketeer Influenced and Corrupt Organizations Act ("RICO") charges. (Dkt. No. 317) For the following reasons, the Government's motion to remove court-appointed second counsel is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 24, 2009, the Government filed a 37-page indictment charging Thamud Eldridge, Kevin Allen and Galen Rose (the "defendants") with 17-counts including racketeering, racketeering conspiracy, murder in aid of racketeering, conspiracy to distribute controlled substances, possession of firearms in furtherance of drug trafficking crimes, violent crime in aid of racketeering-kidnaping, Hobbs Act robbery and conspiracy, and various firearm

offenses.[1] In sum, it is alleged that defendants were members of a criminal organization that engaged in the distribution of cocaine, cocaine base, marijuana and heroin and also committed acts of violence in furtherance of their drug trafficking enterprise, including murder, robbery and extortion. The organization operated principally on the East Side of Buffalo, New York. Defendants allegedly robbed, murdered and attempted to rob and murder other individuals involved in drug distribution and allegedly carried, brandished and discharged firearms in furtherance of these activities.

In addition to the various RICO charges, the indictment included Notices of Special Findings as to each defendant pursuant to Sections 3591 and 3592 of Title 18 of the United States Code, which govern the imposition of a sentence of death. As a result of this and pursuant to Section 3005 of Title 18 of the United States Code, the Court appointed two counsel for each defendant, one being "learned in the law" in death penalty matters.

On February 4, 2010, the Government notified defendants and the Court that a notice of intention to seek the death penalty would not be filed in this matter. The Government subsequently filed a motion for removal of court-appointed second counsel on February 16, 2010. That motion was denied by Magistrate Judge Hugh B. Scott, on the grounds that the case presented complex

---

[1] A fourth defendant, Kashika Speed, was also charged. Speed entered into a plea agreement before this Court on June 16, 2014.

legal and factual issues, and removing counsel from defendants at this stage in the proceeding would cause significant disruption in the defendants' representation, result in extended delays, and place an atypical burden on the remaining counsel.

Over the next four years, the Government and defense counsel engaged in extensive motion and hearing practice, including a motion to recuse the United States Attorney's Office of the Western District of New York and five evidentiary hearings. Each defendant had the benefit of court-appointed second counsel throughout this time.

On June 17, 2014, at the conclusion of the majority of pretrial motions and shortly before a trial date was to be set, the Government filed a second motion for removal of court-appointed second counsel.[2] During oral argument, the Government indicated that the filing of the second motion was prompted by this Court's removal of defendant Speed's court-appointed second counsel following his severance from the other defendants. The motion to remove was again denied by the Magistrate Judge, who noted that "because this case presents

---

[2] Prior to the filing of the Government's second motion to remove court-appointed second counsel, defendant Speed was severed from the other defendants and a trial date for Speed only was set for June 18, 2014. On May 30, 2014, the Court held a status conference regarding Speed's dual court-appointed counsel. After hearing the parties' respective positions, the Court determined that it would permit only one court-appointed attorney to represent defendant Speed going forward. A short adjournment was granted, from mid-June until early July, to allow remaining counsel time to prepare to proceed to trial on his own. Defendant Speed entered a plea on June 16, 2014.

complex legal and factual issues, removing learned counsel from the defendants at this late stage would cause significant disruption in the defendants' representation and place an atypical burden on remaining counsel." (Dkt. No. 315)

On July 3, 2014, the Government renewed, before this Court, its motion to remove court-appointed second counsel. Therein, the Government noted that the Magistrate Judge's determination was "without prejudice" and that this Court has plenary jurisdiction with respect to the case. The Government cited this Court's decision regarding counsel as to defendant Speed, the Criminal Justice Act Guidelines, the *Death Penalty Reference Guide* (June 2012, Western District of New York), and Second Circuit case law, in support of its assertion that court-appointed second counsel for the three remaining defendants should be removed.

## DISCUSSION

*Procedural Issues*

Defendants contend that this motion is not properly before the District Court and that, even if it were, the law of the case doctrine prevents the Court from revisiting this issue. Before turning to the merits of the Government's motion, the Court will address defendants' procedural arguments.

Section 636 of Title 28 of the United States Code states that "a judge **may** designate a magistrate...to hear and determine any pretrial matters pending

before the Court, except motions...to dismiss or quash an indictment or information made by a defendant...or to suppress evidence in a criminal case." *See* 28 U.S.C. §636(b)(1)(A) (emphasis added).  Further, Rule 59(a) of the Federal Rules of Criminal Procedure provides that a district judge "**may** refer to a magistrate for determination any matter that does not dispose of a charge or defense [and the] magistrate judge must promptly conduct the required proceedings and, when appropriate, enter on the record an oral or written order stating the determination. " *See* Fed. R. Crim. P. 59(a) (emphasis added).  With respect to dispositive motions, the Supreme Court has held that a district court may refer dispositive motions to a magistrate for recommendation so long as "the entire process takes place under the district court's total control and jurisdiction." *United States v. Raddatz*, 447 U.S. 667, 681 (1980).

     Defendants argue that because the initial motions to remove court-appointed second counsel were referred to and decided by Magistrate Judge Scott, the Government was obligated to file an appeal of the Magistrate Judge's determination, or seek reconsideration, rather than bring a new motion before this Court.  This is incorrect.  The Government was within its rights to file a new motion rather than an appeal, and this Court is within its rights to consider that motion.  Indeed, while Section 636(b)(1)(A) and Rule 59(a) provide that a district court *may* refer non-dispositive motions to a magistrate judge, they certainly do not prohibit a district court from adjudicating a non-dispositive pre-trial motion on

5

its own, regardless of whether that same motion was previously brought before a magistrate judge. A motion for removal of court-appointed second counsel has been renewed before this Court, and this Court, pursuant to Article III of Section I of the Constitution, certainly retains the power and jurisdiction to adjudicate the motion. *See Thomas v. Arn*, 474 U.S. 140 (1985) ("The district judge has jurisdiction over the case at all times. He retains full authority to decide whether to refer a case to the magistrate, to review magistrate's report, and to enter judgment. Any party that desires plenary consideration by the Article III judge of any issue need only ask.")

      Defendants also argue that the Magistrate Judge's denial of the Government's motion to remove court-appointed second counsel has become the law of the case, and as such it should not be disturbed by this Court. The law of the case doctrine dictates that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d. Cir. 1991). Importantly, this doctrine is discretionary, and does not prevent a court from reconsidering an issue previously decided. *See American Hotel International Group, Inc. v. Onebeacon Insurance Company*, 611 F. Supp. 2d 373 (SDNY 2009); *accord Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245, 1255 (2d. Cir. 1992) (the law of the case doctrine is "admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment").

*See also Arizona v. California*, 460 U.S. 605, 618 (1983) (law of the case doctrine "does not limit tribunal's power"); 1B James W. Moore et. al., *Moore's Federal Practice* P 0.404[1] ("At the trial court level, the doctrine of law of the case is little more than a management practice to permit logical progression toward judgment."); 18 Charles A. Wright et al., *Federal Practice and Procedure* §4478 (1981) ("it is clear that all federal courts retain the power to reconsider if they wish").

Courts generally depart from the law of the case when there is a change in controlling law, when new evidence becomes available, to correct a clear error, or prevent manifest injustice. *DiLaura v. Power Authority*, 982 F.2d 73, 76 (2d. Cir. 1992). The Second Circuit has held that prior decisions may be revisited in light of "cogent" or "compelling" reasons. *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 789 (2d. Cir. 1983); *Scherer v. The Equitable Life Assurance Society of the United States*, 2004 U.S. Dist. LEXIS 18875 (SDNY 2004) ("In deciding whether to exercise its discretion to depart from the law of the case doctrine and change an earlier ruling, a district court may consider changes in the governing law, newly discovered facts, or other circumstances bearing upon a fair resolution of the case.")

Courts in this Circuit have further stated that in determining whether to apply the law of the case doctrine, it is important to consider the stage of the proceeding. *See Bonnie & Company Fashions, Inc v. Bankers Trust Company*,

955 F. Supp. 203 (SDNY 1997); *accord Wright, et al.*, §4478, at 791. Thus, rulings made at a pretrial stage may be subject to reconsideration as a case progresses toward trial. *Id*. *See also United States v. Agent Orange*, 733 F.2d 10 (2d. Cir. 1984) ("the interlocutory orders and rulings made by a pre-trial judge are subject to modification by the district judge at any time prior to final judgment").

      The Court has considered the precedent set forth above and finds that the law of the case doctrine does not prohibit it from reconsidering the Government's motion and reaching a different conclusion than that of the Magistrate Judge. Indeed, like a motion for severance, the instant motion for removal of court-appointed second counsel is directly relevant to the manner in which this case will be tried. It would be illogical if the Court tasked with the responsibility of presiding over the trial was prohibited from reconsidering the Magistrate Judge's prior orders regarding the make-up of defendants' court-appointed counsel. Furthermore, this Court is ultimately responsible for appropriately limiting expenditures pursuant to the Criminal Justice Act, and should not be hamstrung in making final determinations regarding court-appointed, taxpayer-funded counsel prior to trial. The law of the case doctrine, which is discretionary and considered a "management practice to permit logical progression toward judgment", would not intend such a result.

      Also significant is the *Death Penalty Reference Guide*, issued in June of

2012 by the Clerk of the Court of the Western District of New York, which states that "if it is determined that the death penalty will not be sought, the Court should reduce the number of appointed counsel, unless there are extenuating circumstances....[t]his decision should be made by the presiding Judge at the time."  The *Death Penalty Reference Guide* was not yet published when Magistrate Judge Scott issued his first denial of the motion to remove court-appointed second counsel, and it does not appear that Magistrate Judge Scott considered the *Death Penalty Reference Guide* when he issued his subsequent denial in July of this year.  The *Death Penalty Reference Guide* makes clear that once a decision not to seek the death penalty is made, the number of counsel should be reduced absent extenuating circumstances.  Magistrate Judge Scott concludes that the removal of learned counsel would cause significant disruption in the defendants' representation and place an atypical burden on remaining counsel.  He does not, however, specify what extenuating circumstances exist here, as opposed to other complicated cases which were originally death penalty eligible, that would justify the continuation of court-appointed second counsel.  The recent publication of the *Death Penalty Reference Guide* by the Clerk of this Court, as well as the Magistrate Judge's failure to specifically consider it in his most recent decision, also warrant reconsideration of this issue.

  <u>Defendants' Right to Court-Appointed Second Counsel</u>

  Having found that the instant motion can be considered by this Court, the

Court now turns to the merits of the Government's motion.  As set forth in detail below, Court finds that there are cogent and compelling reasons to grant the Government's renewed request.

The Second Circuit has held that when the Government decides not to seek the death penalty, defendants no longer have a statutory right to court-appointed second counsel.  *United States v. Douglas*, 525 F.3d 225 (2d. Cir. 2008).  In addition, the Criminal Justice Act Guidelines ("CJA Guidelines") provide that the court should, absent extenuating circumstances, make an appropriate reduction in the number of counsel in cases where the death penalty will not be sought.  *See* Guidelines for the Admin. Of Criminal Justice Act, vol. VII, § A, ch. 6.02(B)(2).  In determining whether extenuating circumstances exist, the Court should consider the following: (a) the need to avoid disruption in the proceedings; (b) whether the decision not to seek the death penalty occurred late in the litigation; (c) whether the case is unusually complex; and (d) any other factors that would interfere with the need to ensure adequate representation of the defendant.  *Id*.

The Court has carefully considered this matter and finds that the circumstances here do not require that defendants continue with court-appointed second counsel.  The indictment is lengthy and the charges extensive.  However, the Court disagrees with Magistrate Judge Scott's assessment that this matter is so unusually complex that it requires two lawyers per each defendant.  This case

is no more factually or legally complicated than other multi-defendant RICO and RICO conspiracy cases which have been tried before this Court and which have involved a single court-appointed lawyer for each defendant.  Likewise, this case is no more factually or legally complicated than other cases which included Notices of Special Findings pursuant to Sections 3591 and 3592, and which involved a reduction of counsel when it was determined that the Government would not seek the death penalty.  The lawyers in those matters provided competent and comprehensive representation to their clients.  Similarly, the lawyers involved here are some of the most experienced and skilled criminal defense attorneys in the area, each of whom is fully capable of trying a complicated RICO matter on his or her own.  Indeed, all cases involving RICO, RICO conspiracy and murders are complex.  If this Court were to determine that the nature of the charges here required two lawyers per defendant, it would rarely if ever be permitted to reduce counsel when the Government elected not to pursue the death penalty.  This result would be in direct conflict with the instructions of the Criminal Justice Act Guidelines, as well as this Court's duty to control taxpayer expenses.

The decision not to seek the death penalty was made early on in the litigation, in February of 2010.  Notwithstanding, defendants have retained the benefit of two court-appointed lawyers for the last four and a half years.  As indicated previously, the motion and hearing practice in this matter has been

extensive to say the least, and a total of six court-appointed lawyers represented four defendants throughout the entirety of those pre-trial proceedings. With the exception of the filing of objections to a final Report and Recommendation from the Magistrate Judge, all pre-trial matters are now concluded. Unlike many individuals charged with extremely serious yet non-capital crimes, each defendant here has had the benefit of two very experienced attorneys filing and arguing motions, conducting hearings, and preparing his case for trial over the past four and a half years.

The Court finds that removal of court-appointed second counsel will not significantly disrupt the proceedings. The trial is not scheduled to begin until January 2015, which would afford counsel four and a half months to prepare. Considering the fact that all pre-trial motions are completed, and taking into account the experience and skill of the remaining lawyers, this is a sufficient amount of time to prepare for trial. Indeed, it bears mentioning that while court-appointed second counsel will be removed, three defense attorneys remain who will have the opportunity to collaborate, when appropriate, over the course of the trial.

Defense counsel argues that they, as well as their clients, have "detrimentally relied" on the Magistrate Judge's prior rulings and that removal of one court-appointed attorney will cause a serious disruption in representation. They note that the case will be extremely time consuming and demanding to try,

that it will require significant investigation, and that they have divided the work accordingly. They further emphasize the relationship that each attorney has developed with their respective clients. The Court is aware of, and sensitive to, the demands that this trial will place on counsel as well as the disruption involved when removing one attorney. However, these legitimate concerns must be weighed in light of the CJA Guidelines and the *Death Penalty Reference Guide* which require the Court to limit taxpayer expense by removing second counsel when appropriate.

Here, the demands cited by counsel and the disruption in removing an attorney, while not insignificant, are present in most serious and lengthy criminal trials and are not the types of unique circumstances which would require the continuation of two court-appointed attorneys. If the Court were to accept these as extenuating circumstances, it would seldom be permitted to remove court-appointed second counsel after learning that the Government did not intend to seek the death penalty. As noted above, this notion is directly contrary to the Court's duty, pursuant to the CJA Guidelines and this District's *Death Penalty Reference Guide*, to reduce expenditures and remove taxpayer-funded second counsel when the death penalty will not be sought and no extenuating circumstances exist. Extenuating circumstances do not exist here. All pre-trial motions are complete, one very experienced criminal defense attorney per defendant will remain to conduct the trial, the trial may proceed timely as

scheduled, and defendants' Sixth Amendment rights are fulfilled. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989) (indigent defendants may not choose their own court-appointed lawyers, and "have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts").

## **CONCLUSION**

For the reasons set forth above, the Government's third motion to remove court-appointed second counsel is granted. Angelo Musitano shall continue to represent defendant Eldridge, Cheryl Meyers Buth shall continue to represent defendant Allen[3] and Daniel Henry shall continue to represent defendant Rose. All remaining attorneys shall be removed from the case.

SO ORDERED.

---

[3] The Court is mindful of Ms. Buth's affidavit indicating that she was appointed to the case in August of 2010, after Ms. Kubiak left private practice to join the Federal Public Defender's Office, and that Mr. Harrington has maintained the majority of client contact. However, during oral argument Mr. Harrington represented that as a result of his obligations in the US Military Commission proceedings at Guantanamo Bay, Cuba, he would be unable to handle the trial on his own. Since Ms. Buth has been assigned to the case for four years and has maintained the day-to-day handling of the file, the Court finds that it is most appropriate for her to proceed as counsel for Mr. Allen.

*Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   September 16, 2014