UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                    v.                                    DECISION AND ORDER
                                                              09-CR–329

THAMUD ELDRIDGE, KEVIN ALLEN,
and GALEN ROSE,

                              Defendants.

## INTRODUCTION

Before the Court are defendants Thamud Eldridge, Kevin Allen and Galen

Rose's (collectively referred to as "defendants") motions for severance of counts

and defendants pursuant to Rule 8 and Rule 14 of the Federal Rules of Criminal

Procedure.  For the following reasons, defendants' motions for severance are

denied in their entirety.

## PROCEDURAL AND FACTUAL BACKGROUND

On June 20, 2012, the Grand Jury for the Western District of New York

issued a Superseding Indictment charging defendants Thamud Eldridge and

Kevin Allen with racketeering activity in violation of Racketeer Influenced and

Corrupt Organizations Act ("RICO") (18 U.S.C. §§1961(1) and 1961(5)) and

conspiracy to commit racketeering (18 U.S.C. §1962(d)).[1]  It is alleged that

defendants Eldridge and Allen were members of a criminal organization that

engaged in the distribution of cocaine, heroin and marijuana, and committed acts

of violence, including murder, robbery and extortion, in furtherance of their drug

trafficking enterprise.  It is alleged that the organization operated principally on

the East Side of Buffalo, New York and that members of the organization and

others robbed, murdered, and attempted to rob and murder other individuals

involved in drug trafficking.  Multiple counts in the Superseding Indictment relate

to the murders of Thedrus Laster a/k/a Flap ("Laster") and Sam Jones a/k/a

Smokey ("Jones"), rival drug dealers who were killed in separate incidents in April

2005.

In addition to the RICO and RICO conspiracy counts, defendants Eldridge

and Allen are also charged with narcotics conspiracy (21 U.S.C. §846),

possession of firearms in furtherance of drug trafficking (18 U.S.C. §924(c)(1)),

kidnaping (of Victim B) in aid of racketeering (18 U.S.C. 1959(a)(1)), Hobbs Act

robbery (of Victim B) (18 U.S.C. §§1951 and 2), and possessing and brandishing

of firearms in furtherance of violent crime (18 U.S.C. §§924(c)(1)(A)(ii) and 2).

Defendant Galen Rose is charged with possession with intent to distribute

marijuana (21 U.S.C. §841(a)(1)) and conspiracy to distribute marijuana.

---

[1] Another defendant, Kashika Speed, was also charged in the Superseding
Indictment.  Speed entered into a plea before this Court on June 16, 2014.

Defendants Eldridge and Rose are charged in connection with the murder of Laster.  Specifically, defendants Eldridge and Rose are charged with Hobbs Act robbery and discharge of a firearm causing death (18 U.S.C. §§§924(c)(1)(A)(iii), 924(j)(1) and 2).  With respect to Laster's death, defendant Eldridge is also charged with murder in aid of racketeering (18 U.S.C. §§1959(a)(1) and 2).  Defendants Eldridge and Allen are charged in connection with the murder of Jones.  Those allegations, as to both Eldridge and Allen, include murder in aid of racketeering, Hobbs Act robbery, and discharge of a firearm causing death.

In addition, defendant Eldridge is charged with possession and discharge of a firearm in furtherance of drug trafficking (18 U.S.C. §§924(c)(1)(A)(iii) and 2) and felon in possession of a firearm (18 U.S.C. §§§922(g)(1), 924(a)(2) and 2). These counts relate to an incident occurring on or about September 21, 2005, during which defendant Eldridge allegedly fired shots at Officer Joy Jermain, a member of the City of Buffalo Police Department.

This case was referred to Magistrate Judge Hugh B. Scott for supervision of all pre-trial proceedings.  Defendants made various omnibus motions and the Magistrate Judge conducted evidentiary hearings.  On June 12, 2013, Magistrate Judge Scott issued a Report and Recommendation and Decision and Order addressing defendants' pre-trial motions.  Defendants objected to portions of the Report and Recommendation and Decision and Order.  Following briefing and

oral argument, this Court adopted the findings and conclusions set forth in the Report and Recommendation and Decision and Order.[2]

While the objections to the Magistrate Judge's decisions were pending before this Court, defendants Eldridge and Allen moved for an order returning the case to Magistrate Judge Scott to conduct additional evidentiary hearings and adjudicate additional pre-trial motions.  This Court referred defendants' requests for further evidentiary hearings to the Magistrate Judge, and issued a Decision and Order as to defendants' other motions.[3]  On August 25, 2014, following a hearing, Magistrate Judge Scott filed a Report and Recommendation recommending denial of defendant Allen's motion to dismiss counts of the Superseding Indictment related to the Jones murder, as well as denial of defendants' other remaining requests.  No objections were filed and this Court issued a Decision and Order adopting Magistrate Judge Scott's final Report and Recommendation on September 29, 2014.

Currently, the only pre-trial issues which remain pending are defendants'

--------

[2]  For a more complete discussion of defendants' omnibus motions, the Magistrate's recommendations, and the rulings as to defendants' objections, *see* Magistrate Judge Scott's June 12, 2013 Report and Recommendation and Decision and Order [Dkt. Nos. 216 and 217], and this Court's Decision and Order dated November 20, 2013 [Dkt. No. 249].

[3]  For a more complete discussion of the additional motions and the Court's prior rulings, *see* defendant Allen's November 17, 2013 motion [Dkt. No. 244] and this Court's Decision and Orders dated January 23, 2014 [Dkt. No. 257] and April 30, 2014 [Dkt. No. 290].

motions for severance of defendants and counts pursuant to Rule 8 and Rule 14

of the Federal Rules of Criminal Procedure.[4]  In sum, defendants argue that

certain counts of the Superseding Indictment are not related, that a joint trial

involving particular counts or defendants would result in spillover prejudice, and

that a joint trial would compromise their right to confront the witnesses against

them or pursue antagonistic defenses.  As explained in detail herein, the Count

finds that all defendants and counts in the Superseding Indictment have been

properly joined, and that a joint trial will not unduly prejudice the trial rights of any

defendants, nor will it prevent the jury from making a reliable determination as to

guilt or innocence.


## DISCUSSION

### *Rules Governing Joinder and Severance*

Federal Rule of Criminal Procedure 8 governs questions of joinder.  *United

States v. Cervone*, 907 F.2d 332, 341 (2d. Cir. 1990).  Rule 8(a) provides for

joinder of offenses and states that:

> [a]n indictment may charge a defendant in separate counts with 2 or
> more offenses if the offenses charged...are of the same or similar

---

[4]  Defendants moved for severance in their initial omnibus motions, and
Magistrate Judge Scott referred the severance motions to the District Court.
Defendants have since supplemented their initial severance requests in their
subsequent motions papers, and all arguments raised by defendants in favor of
severance over the course of the proceedings have been considered by the Court.

> character, or are based on the same act or transaction, or are
> connected with or constitute parts of a common scheme or plan.

*See* Fed. R. Crim. P. 8(b).  Joinder of offenses is typically proper when counts

"have a sufficiently logical connection to each other" or "where the same evidence

may be used to prove each count."  *United States v. Rivera*, 546 F.3d 245, 253

(2d. Cir. 2008).  The Second Circuit has noted that Rule 8(a) does not require

"too precise an identity between the character of the offenses", and crimes of a

"similar" nature but not the "same" nature may be joined*.  United States v.*

*Werner*, 620 F.2d 922, 926 (2d. Cir. 1980).  Similar charges include those that

are "somewhat alike" or those which have a "general likeness" to each other.

*Rivera*, 546 F.3d at 243.  *See also United States v. Mackie*, 157 Fed. Appx. 378

(2d. Cir. 2005) ("Joinder under Rule 8(a) is proper where the same evidence will

support the joined counts.")

Rule 8(b) provides for joinder of defendants and states that an indictment:

> may charge 2 or more defendants if they are alleged to have
> participated in the same act or transaction, or in the same series of
> acts or transactions constituting an offense or offenses.  The
> defendants may be charged in one or more counts together or
> separately.  All defendants need not be charged in each count[.]

*See* Fed. R. Crim. P. 8(b).  The Second Circuit has interpreted the language of

Rule 8(b) to mean that "joinder is proper where two or more persons' criminal acts

are 'unified by some substantial identity of facts or participants' or 'arise out of a

common scheme or plan'."  *Cervone*, 907 F.2d at 341; *quoting United States v.*

*Attanasio*, 870 F.2d 809, 815 (2d. Cir. 1989).  There exists a "preference in the federal system for joint trials of defendants who are indicted together."  *Zafrio v. United States*, 506 U.S. 534, 537 (1993).

Unlike Rule 8(a), Rule 8(b) does not permit joinder of defendants solely on the grounds that the offenses are of "the same or similar character."  *United States v. Rajaratnam*, 753 F. Supp. 2d 299 (SDNY 2010); *accord United States v. Turoff*, 853 F.2d 1037, 1042-43 (2d. Cir. 1988).  "Thus, though both subdivisions of Rule 8 focus on the nature of the acts constituting the alleged offenses, 8(b) provides a more restrictive test when multiple defendants are involved."  *Turoff*, 853 F.2d at 1042-43.

The Second Circuit, as well as other district courts in this Circuit, have repeatedly held that when a defendant in a multi-defendant case challenges joinder of offenses involving multiple defendants, his request is made under Rule 8(b) rather than Rule 8(a).  *Id*. at 1043; *see also Attanasio*, 879 F.2d at 814-15 (applying Rule 8(b) to determine whether two conspiracies should be tried together); *United States v. Muhammad*, 2010 U.S. Dist. LEXIS 51679 (Dist. Conn. 2010) ("Where multiple defendants are charged in the same indictment, Rule 8(b) governs any motion for severance based upon improper joinder.")  However, it is less clear what standard applies when a defendant in a multi-defendant case seeks severance of a count that applies only to him.  *See United States Biaggi*, 909 F.2d 662, 675-76 (2d. Cir. 1990) (acknowledging the "thoughtful opinion" of

7

the district court, which limited the reach of *Turoff* on the ground that it "should be understood to apply Rule 8(b) standards to the claim of a defendant in a multi-defendant trial only when he seeks severance of counts in which he and at least one of his co-defendants are charged", while leaving open the possibility that "Rule 8(a) standards apply to a defendant in a multi-defendant trial who seeks severance of counts in which he is the only defendant charged"); *United States v. Shellef*, 507 F.3d 82, 97 (2d. Cir. 2007) (noting, *in dicta*, that the answer to the question of which Rule 8 standard is to be used when a defendant in a multi-defendant case seeks severance of a count related only to him is unsettled, but finding that the resolution of the appeal would be the same under either standard). Here, defendants move, *inter alia*, to sever some counts which name a single defendant.  Because the Court finds, as will be explained in detail below, that all of the counts alleged in the Superseding Indictment are properly joined pursuant to the more restrictive standard set forth in Rule 8(b), this issue will not need to be resolved.

Notwithstanding proper joinder, a defendant may move pursuant to Federal Rule of Criminal Procedure 14(a) for severance if he or she believes that the joinder is prejudicial.  *See* Fed. R. Crim. P. 14 ("If the joinder of offenses or defendants in an indictment...appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.")  The Supreme Court has instructed

8

that "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment of guilt or innocence."  *Zafiro*, 506 U.S. at 539.  The decision of whether to order separate trials or provide other relief is addressed to the discretion of the district court.  *United States v. Blakney*, 941 F.2d 114, 116 (2d. Cir. 1991).

Having explained the proper standards for determining joinder and severance, the Court will now consider the arguments advanced by each individual defendant.

### *Galen Rose*

Defendant Rose moves for severance and a separate trial of Counts 8, 9, 11 and 12 of the Superseding Indictment.  He argues that these counts are not properly joined and that a joint trial will result in spillover prejudice.

Counts 11 and 12, which also name defendant Eldridge, relate to the death of Laster on April 3, 2005.  Specifically, it is alleged that defendants Rose and Eldridge conspired to extort and rob money and controlled substances from Laster, and that they murdered Laster in the course of the robbery.  Not only does this alleged incident provide the basis for Counts 11 and 12, but it also provides the basis for Racketeering Act 5 of Count 1.  In addition, the conduct occurred during the time period of the RICO and RICO conspiracy and is consistent with the

9

enterprise's alleged purpose and objectives, which included committing acts of robbery, extortion and murder in order to obtain things of value. Even though defendant Rose is not named in the RICO and RICO conspiracy, Counts 11 and 12 are unified by a substantial identity of facts and participants with Counts 1 and 2 and arise out of the very same scheme or plan as alleged in Racketeering Act 5. *See Cervone*, 907 F.2d at 332 (defendant properly joined even though he was not charged in the RICO conspiracy or underlying racketeering acts and his link to other eighteen defendants was "somewhat tenuous", because defendant was the recipient of a labor bribe which was the subject of a racketeering act and "integrally related" to other counts in the indictment). For these reasons, the Court finds that Counts 11 and 12 are properly included in the Superseding Indictment.

Counts 8 and 9 allege that from 1999 through in or about April 2005, defendant Rose possessed marijuana with intent to distribute it and conspired to distribute marijuana. Rose argues that because he is the only defendant charged in Counts 8 and 9, and because they represent a separate conspiracy from the RICO charges and the narcotics conspiracy alleged against defendants Eldridge and Allen in Count 3, they are not properly joined. The Court disagrees. Based upon the Government's prior representations to the Court, it is alleged that defendant Rose was significantly involved with Laster's substantial marijuana trafficking enterprise, and that, after falling out of favor with Laster, Rose conspired with Eldridge to rob Laster of controlled substances and money. This

10

robbery resulted in Laster's murder.  Indeed, Laster and defendant Rose's marijuana distribution activity forms the basis for Counts 8 and 9 and is integrally related, both factually and temporally, to the robbery and murder of Laster.  In addition, this scheme or plan to rob and murder Laster is consistent with the RICO enterprise's goals of obtaining money and power through the robbery, intimidation and murder of rival drug dealers.  Because the marijuana conspiracy alleged in Counts 8 and 9 is factually related to one of the underlying racketeering acts, and because the time period of the marijuana conspiracy did overlap with the racketeering activity, the RICO conspiracy, and the narcotics conspiracy in Count 3, the Court finds that Counts 8 and 9 are properly joined.  *See Turoff*, 853 F.2d at 1044 ("applying a commonsense rule to these facts" to determine whether a "reasonable person would easily recognize the common factual elements that permit joinder"); *United States v. Barton*, 647 F.2d 224, 237 (2d. Cir. 1981) ("even if a defendant is not named in a conspiracy or RICO count, he may be charged to have participated in the same series of acts or transactions that constituted the conspiracy or RICO offense, despite the fact that his participation may have been too limited to permit his being included as a co-conspirator or co-racketeer").

The Court further finds that defendant Rose has not met his burden of showing that prejudice from a joint trial is "sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials."  *United States v. Walker*,142 F.3d 103, 110 (2d. Cir. 1998); *United States v. Potamitis*,

739 F.2d 784, 790 (2d. Cir. 1984) (defendant seeking severance on the grounds

of spillover prejudice must show more than evidence of a "better chance of

acquittal" if severance is granted).

Defendant Rose argues that he will suffer substantial prejudice because he

is only charged in four of the 17 counts of the Superseding Indictment, and that

the evidence as to the other counts and defendants is much more egregious.  The

Court recognizes that all joint trials which include charges against one defendant

but not another are in some way prejudicial.  However, in light of the strong

preference for joint trials, and the Court's ability to issue limiting instructions, this

concept alone is not sufficient to require severance.  *See United States v. Carson*,

702 F.2d 351, 367 (2d. Cir. 1983) (the fact that evidence may be admitted as to

one defendant and not another does not necessarily require severance); *United

States v. Diaz*, 176 F.3d 52, 103 (2d. Cir. 1999) (evidence that RICO co-

conspirators committed eight murders and other acts of violence, sold narcotics,

and maintained and shared weapons for their criminal activities did not create

substantial prejudice for defendant, who was charged with a single, unrelated

murder); *United States v. Spinelli*, 352 F.3d 48, 55 (2d. Cir. 2003) ("differing levels

of culpability and proof are inevitable in any multi-defendant trial and, standing

alone, are insufficient grounds for separate trials...[e]ven joint trials involving

defendants who are only marginally involved alongside those heavily involved are

constitutionally permissible").  Defendant Rose has made no showing that the

evidence which will be introduced in relation to the other charges and defendants will deny him the right to a constitutionally fair trial.  As to his argument that the nature of the evidence against defendants Allen and Eldridge is much more egregious, the Court notes that all three defendants are charged with very serious and violent crimes, including drug distribution, robbery, and murder.

Moreover, any potential prejudice to defendant Rose may be sufficiently overcome by limiting instructions which remind the jurors they are to consider certain evidence as to certain defendants only, and that they must consider the guilt or innocence of each defendant, as to each count, separately.  While defendant Rose argues that the factual overlap between Counts 11 and 12 and Racketeering Act 5 will result in juror confusion, the factual allegations and charges here are relatively straightforward and uncomplicated.  There appears to be no reason why the jury will not be able to weigh the evidence separately as to each defendant on each charge and render a fair and impartial verdict.  Indeed, the parties will have the ability to propose limiting instructions during the trial and to submit proposed jury charges to the court, and defendants may suggest instructions to limit any spillover prejudice presented by a joint trial.  *See United States v. Rittweger*, 524 F.3d 171, 174 (2d. Cir. 2008) ("in light of the relatively straightforward nature of the evidence at issue and the district court's careful limiting instruction to the jury" defendants failed to meet their heavy burden of persuasion under Rule 14); *Potamitis*, 739 F.2d at 784 (severance not

13

appropriate where district judge's limiting instructions to the jury were adequate to protect defendants from spillover evidence admissible only against other co-defendants).

Finally, the Court rejects defendant Rose's argument that he must be severed from defendant Eldridge because he intends to offer an antagonistic defense with respect to the murder of Laster.  "A simple showing of some antagonism between defendants' theories of defense does not require severance." *United States v. Carpentier*, 689 F.2d 21, 27-28 (2d. Cir. 1982).  In order to show "mutually antagonistic" or "irreconcilable defenses", a defendant "must make a factual demonstration that acceptance of one party's defense would tend to preclude the acquittal of the other."  *United States v. Salameh*, 152 F.3d 8, 116 (2d. Cir. 1998).  Defendant Rose speculates that witnesses will testify as to Eldridge's involvement in the Laster murder.  However, both Eldridge and Rose are alleged to have participated in Laster's murder and it is unclear as to how independent evidence of Eldridge's involvement would provide a defense for Rose.

Since defendant Rose has failed to demonstrate that a specific trial right would be compromised by a joint trial, or that the jury would be unable to make a reliable judgment of guilt or innocence if severance was not granted, his motion is denied in all respects.

*Thamud Eldridge*

Defendant Eldridge moves for severance from other defendants and a separate trial as to Counts 16 and 17 of the Superseding Indictment. He argues that Counts 16 and 17 are misjoined, and that he will suffer spillover prejudice due to statements by co-defendants, antagonistic defenses and the nature of the conduct charged in Counts 16 and 17.

Count 16 alleges that, on or about September 21, 2005, defendant Eldridge discharged a firearm in furtherance of the drug trafficking conspiracy alleged in Count 3 of the Superseding Indictment. Count 17 alleges that, on that same date, defendant Eldridge unlawfully possessed a firearm after having been convicted of a felony. Defendant's possession and discharge of a firearm occurred during the same time period as the racketeering activity alleged in Count 1, the RICO conspiracy alleged in Count 2, and the narcotics conspiracy alleged in Count 3. Furthermore, Counts 16 and 17 are logically and temporally connected to the remainder of the Superseding Indictment, which alleges that defendants, *inter alia*, possessed, carried and discharged firearms in furtherance of their drug dealing enterprise and other gang related activities. Indeed, Count 3 is specifically incorporated by reference in Count 16. For these reasons, the Court finds that Counts 16 and 17 are properly joined in the Superseding Indictment.

The Court rejects defendant Eldridge's argument that he will suffer undue prejudice if Counts 16 and 17 are tried with the remainder of the Superseding

15

Indictment, since those counts involve allegations that he shot a handgun at a marked police vehicle.  Defendant Eldridge is charged with being a member of a violent street gang that distributed marijuana, cocaine and heroin, and extorted, robbed and murdered others in order to gain power, money and to advance their drug distribution network.  In light of the extremely serious allegations which are charged in the remainder of the Superseding Indictment against defendant Eldridge, the Court finds that the facts surrounding Counts 16 and 17 are not so unduly prejudicial as to deny defendant Eldridge a constitutionally fair trial.

The Court also finds unavailing defendant Eldridge's arguments that Counts 16 and 17 must be severed because inclusion of them will result in a "trial within a trial".  Defendant argues that the nature and volume of evidence as to Counts 16 and 17 will command much more time and necessitate many more witnesses than the other counts of the Superseding Indictment.  The preference for joint trials is based upon conservation of judicial resources.  Indeed, this appears to be all the more reason that Counts 16 and 17 should be tried together with the remainder of the Superseding Indictment.  Having already determined that Counts 16 and 17 are properly joined and will not unduly prejudice defendant Eldridge, it makes little sense for the Court to conduct a separate, long, and undoubtably costly trial as to these counts.

Likewise, the Court rejects defendant's argument that severance should be granted because "the calculus regarding whether Mr. Eldridge testifies as to

Counts 16 and 17 would be entirely different than whether he would elect to testify in the context of a trial involving wide-ranging RICO allegations over a three year period." Courts have recognized that "prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence." *Cross v. United States*, 118 U.S. App. D.C. 324, 335 (D.C. Cir. 1964). However, "a mere unexplicated assertion" of the desire to testify on only one count is not enough to require severance. *Werner*, 620 F.2d at 928. The defendant must make a convincing showing that "he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *Id*. at 930 ("in making such a showing, it is essential that defendant present enough information regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other to satisfy the court that his claim of prejudice is genuine"). Defendant Eldridge has made no such showing here. Instead, he generally asserts that he may want to offer an explanation as to why his DNA evidence was found on an iced tea can discovered in the vehicle from which the shots were fired, but does not want to be questioned regarding the other allegations in the Superseding Indictment. This general and self-serving assertion is not enough to require severance.[5]

---

[5] In his motion papers, defendant Eldridge states that if the Court "requires an affidavit" about his decision as to whether to testify, he requests that the affidavit be submitted *ex parte* to "prevent Government access to his tactical determinations". If defendant elects to renew his motion for severance and include such an affidavit, he shall provide the Court with authority as to why it should be considered *ex parte*.

Defendant Eldridge further argues that a joint trial will compromise his constitutional right to confront the witnesses against him.  He references a number of statements which he claims are admissible against co-defendants, but inadmissable against him.[6]  A defendant's confrontation rights are violated when a non-testifying co-defendant's statements implicating the defendant are admitted into evidence at a joint trial.  *See United States v. Bruton*, 391 U.S. 123, 135-37 (1968) ("where powerfully incriminating extra-judicial statements of a co-defendant, who stands accused side-by-side with a defendant" are admitted at a joint trial, courts "cannot accept limiting instructions as an adequate substitution for [the defendant's] constitutional right to cross-examination.")  Here, the statements described by defendant Eldridge do not appear to implicate him, either explicitly or implicitly, and therefore are not subject to a *Bruton* analysis. Defendant avers that the police interview with defendant Rose on April 3, 2005 details the "long-standing financial arrangement between Laster and Rose regarding the distribution of marijuana" and therefore sets forth a purported motive for the homicide.  However, the Government represents that Rose's statement does not mention Eldridge.  In light of this fact and defendant's description of the statement, it is unclear to this Court how that statement might "implicitly"

---

[6]  Three of the statements cited in defendant's motion papers are statements attributed to Kashika Speed, who has since accepted a plea.  Speed is no longer a defendant in this matter.  Because Speed is not a non-testifying co-defendant, defendant's arguments as to those statements will not be considered.

incriminate Eldridge.  In addition, the parties have represented that defendant Allen's jailhouse letters to an unidentified woman provide details of his feud with Speed and his desire "that harm comes to Speed".  It is equally unclear as to how these letters, if admissible, would implicate defendant Eldridge in any way.

Finally, defendant Eldridge argues that a joint trial will result in substantial prejudice because of the prospect of antagonistic defenses with co-defendant Rose.  Mutually antagonistic defenses are not prejudicial *per se,* and efforts of one defendant to place the blame on the other do not rise to the level of antagonism requiring a severance. *See Zafiro*, 506 U.S. at 538.   In order to show that severance is required due to antagonistic defenses, a defendant must show that the positions of co-defendants are such that "the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant."  *United States v. Villegas*, 899 F.2d 1324, 1346 (2d. Cir. 1990).  "Mere finger-pointing" among co-defendants does not require severance.  *United States v. Casamento*, 887 F.2d 1141, 1154 (2d. Cir. 1989).  For example, in *United States v. Zafiro*, two defendants who had dropped a large container of cocaine each claimed not to know of its contents, and each asserted that the drugs belonged to the other defendant.  506 U.S. at 538. The Supreme Court ultimately found that, in light of the trial court's careful limiting instructions, no undue prejudice had occurred during the joint trial.  *Id*.

Defendant Eldridge argues that it is likely that Rose will assert a defense

that Speed and Eldridge killed Laster alone, while he will argue that Rose acted alone in killing Laster for financial reasons. Other than a claim that an unidentified witness will testify as to Speed's hearsay statement that he and Eldridge killed Laster, defendant Eldridge offers no factual basis for the purported antagonistic defenses. Defendants Eldridge and Rose are both charged in the robbery and murder of Laster. Indeed, even if the statement implicating Eldridge and Speed was deemed admissible and credited by the jury, it does not, in and of itself, exonerate defendant Rose or tend to prove that Eldridge and Speed acted alone. Defendant Eldridge's mere speculation that the co-defendants will attempt to blame each other, without any detailed analysis as to what the defenses will be and what specific evidence may be offered, is insufficient to warrant a severance under Rule 14. Because defendant Eldridge has not demonstrated that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable determination about guilt or innocence, his motion for severance is denied.

### *Kevin Allen*

Defendant Allen moves to sever Counts 8, 9, 16 and 17 from the Superseding Indictment. He argues that the inclusion of Counts 16 and 17 would unfairly prejudice him, and that Counts 8 and 9 represent a separate conspiracy from the substantive RICO and RICO conspiracy charges. As explained in detail above, the Court finds that Counts 8, 9, 16 and 17 are properly joined with the

other counts of the Superseding Indictment.

Defendant Allen alleges that defendant Rose made certain admissions regarding his involvement in the marijuana conspiracy, and that admission of such statements may raise a *Bruton* issue as to defendant Allen.  However, defendant Allen has not identified any specific statements made by defendant Rose, or any non-testifying co-defendant for that matter, which incriminate him.

It is insufficient for a defendant seeking severance to claim that he will be prejudiced by a joint trial, since all joint trials involve some prejudice.  Defendant Allen has not identified any specific trial right that will be compromised by a joint trial, nor has he shown that a joint trial will prevent the jury from making a reliable determination as to his guilt or innocence.  For this reason and for all of the reasons discussed previously with respect to defendant Eldridge and defendant Rose's motions for severance, defendant Allen's motion for severance is likewise denied.

**CONCLUSION**

For the foregoing reasons, defendants' motions for severance of counts and defendants pursuant to Rule 8 and Rule 14 of the Federal Rules of Criminal Procedure are denied in their entirety.

The Government and defendants are instructed to file, as part of their pretrial submissions, joint proposed limiting instructions to the jury which address

21

the issues discussed herein and which the parties agree will apply during the course of the trial.  If the parties are unable to reach an agreement, they are directed to submit individual proposed instructions.  The parties are further instructed that, over the course of the trial, they are to direct the Court as to when and which limiting instructions should be delivered to the jury.


SO ORDERED.



_____*Richard J. Arcara*_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   December 24, 2014