UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.                                             DECISION AND ORDER
                                                                 09-CR–329

THAMUD ELDRIDGE, et al.,

                 Defendants.

---

Before the Court is the Government's motion for reconsideration of the Court's prior decision granting defendant Eldridge's motion to subpoena Assistant United States Attorney ("AUSA") Joseph Tripi and motion to quash various other subpoenas. For the following reasons, the Government's motion for reconsideration is denied and its motion to quash is partially denied, and partially held in abeyance.

As acknowledged in the Government's motion, "a defendant who wishes to call a prosecutor as a witness must demonstrate a compelling and legitimate reason to do so." *United States v. Regan*, 103 F.3d 1072 (2d Cir. 1997); *accord United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975). This Court has already found that a compelling and legitimate reason exists here. On the eve of trial, the Government informed defense counsel and the Court that all physical evidence with regard to the shooting at Buffalo Police Department Officer Joy Jermain on September 21, 2005 and the home invasion on March 24,

2004 had been destroyed. Evidence from the home invasion was destroyed on October 1, 2008 and November 23, 2010. Evidence from the shooting was destroyed on May 16, 2011, after defense counsel filed a discovery motion requesting all physical evidence related to the investigation and after the firearm involved in the shooting incident, which was the subject of another hearing, had been destroyed. The purpose of these hearings is to determine, *inter alia*, whether there was any bad faith involved in the destruction of this evidence. Based upon the information proffered to this Court, as well as testimony provided by witnesses during the instant hearings, it is apparent that AUSA Tripi has direct, relevant knowledge about what efforts, if any, were made by the Government to preserve this evidence, when the Government was first informed about the destroyed evidence, whether the Government authorized destruction of this evidence, and the steps taken by the Government both before and after learning that evidence had been destroyed. The Government essentially argues that this information is irrelevant and redundant. However, the Court finds that it is central to the issues at hand. Moreover, since these hearings are taking place before the Court and not in the presence of the trial jury, there is little to no risk of prejudice or confusion in eliciting testimony by a member of the prosecution.

    The Government's argument that the Court should reconsider its prior decision because AUSA Tripi testified in a related case involving defendant Eldridge, rather than the instant case, is without merit. The Court's misstatement

that AUSA Tripi already testified "in this case" was not the primary basis for the Court's ruling with respect to the subpoena, but instead was offered in response to the Government's argument that the subpoena was a "thinly veiled attempt by defendant to have the lead prosecutor disqualified from the case." Regardless of whether AUSA Tripi testified in this case or in a related case involving the same defendant, the Court finds that granting defendant's subpoena, and requiring AUSA Tripi to testify regarding the narrow topics outlined previously by the Court, does not "create a very real possibility that AUSA Tripi may be called as a witness at trial, and thereafter, disqualified." If the Court determines that information about the destroyed evidence is admissible at trial, a number of witnesses other than AUSA Tripi will testify about the chain of custody and the forensic testing. In challenging the reliability of the evidence, defense counsel can cross-examine the witnesses as to those subjects and the destruction of the evidence in general. The Court does not foresee a scenario where AUSA Tripi will have relevant or necessary trial evidence. That is not the case for these hearings, where the Court is exploring good or bad faith on the part of the Government, rather than the general reliability of the evidence or actions taken by police or agents during the course of the investigation.

Indeed, the Government's reliance on language from this Court's January 31, 2012 Decision and Order is misplaced and does not advance the Government's arguments. Therein, this Court denied defendant Eldridge's

motion to disqualify both the United States Attorney's Office for the Western District of New York as well as AUSA Tripi because "the probability that AUSA Tripi would taint any eventual trial by becoming a witness, while not zero, is too low right now for the aggressive remedy of disqualification."  The same scenario is presented here.  The Court finds little to no probability that AUSA Tripi will be a necessary trial witness, and the Government fails to offer a persuasive argument to the contrary.  Moreover, even if AUSA Tripi did have relevant or necessary trial testimony, that issue would remain unchanged regardless of whether he testifies in these proceedings.

With respect to the Government's request that defendant Eldridge be required to comply strictly with the Department of Justice's *Touhy* Regulations, the Court notes that defense counsel's previous motion requesting the subpoena provided a summary of the testimony sought.  In a colloquy with counsel at the conclusion of the last hearing session, this Court explained the limited nature of the testimony it would permit defense counsel to elicit from AUSA Tripi.  Finally, this Decision and Order clearly outlines the narrow topics that the Court considers relevant and appropriate.

Finally, the Government asks that this Court deny defendant Eldridge's request to issue subpoenas for Erie County District Attorney ("ECDA") Frank A. Sedita and ECCPS Laboratory Director Dr. John Simich.  Rule 17 of the Federal Rules of Criminal Procedure provides that "the court may quash or modify the

subpoena if compliance would be unreasonable or oppressive." *See* Fed. R. Crim. P. 17(c)(2). In some instances, a party to a case has standing to quash a subpoena issued against a third party or witness if it can show a legitimate interest. *United States v. Humphrey*, 2011 U.S. Dist. LEXIS 67857 (WDNY 2011). Courts in this Circuit have recognized that a party has a legitimate interest in quashing a subpoena issued against a witness if it is "based upon the [the party's] interest in preventing undue lengthening of the trial, undue harassment of its witnesses, and prejudicial over-emphasis on [the witness's] credibility." *United States v. Orena*, 883 F. Supp. 849, 869 (EDNY 1995). A party also has standing to quash a third-party subpoena based upon "a claim of privilege or proprietary interest in the subpoenaed material." *United States v. Reyes*, 162 F.R.D. 468 (SDNY 1995). Here, the Government has not sufficiently explained its standing to object to the subpoenas of Dr. Simich and ECDA Sedita.

Regardless of the parties' standing, the Court has an independent duty to review the propriety of the subpoena. *Humphrey*, 2011 U.S. Dist. LEXIS at *5; *see also United States v. Weissman*, 2002 U.S. Dist. LEXIS 24642 (SDNY 2002) ("the court has a duty to ensure that subpoenas are issued only for proper purposes and that they are in compliance with Rule 17"). With respect to the subpoena of Dr. Simich, counsel for defendant Eldridge previously indicated that he intends to question Dr. Simich regarding DNA testing performed at the ECCPS laboratory before evidence was destroyed, as well as how other available

evidence may compare with the destroyed evidence. The Court finds that this information is relevant for purposes of this hearing, and the Government's request to quash the subpoena of Dr. Simich is denied.[1] *See United States v. Barnes*, 411 Fed. Appx. 365 (2d. Cir. 2011) (holding that in showing the missing or destroyed evidence would play a significant role in his defense, a defendant must demonstrate, *inter alia*, "the evidence was of a such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means").

As to the testimony of ECDA Sedita, the Court is unaware, at this time, of the exact subject and nature of the testimony sought as well as the basis of the Government's standing to move to quash the subpoena. Therefore, a decision as to the propriety of this subpoena will be held in abeyance until defense counsel makes a detailed proffer as to the subject matter of the testimony, and the Government advances an argument as to its standing.

SO ORDERED.

*Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: August 14, 2015

---

[1] The Court notes that the issue of Dr. Simich's testimony was also addressed at the conclusion of the Government's case on July 29, 2015, at which time the Court noted that it would allow defense counsel to call Dr. Simich, but may, in its discretion, limit the testimony.