UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

UNITED STATES OF AMERICA

                                                                         DECISION AND ORDER
         v.                                                                     09-CR-329A

THAMUD ELDRIDGE,

                        Defendant.

─────────────────────────────────

## INTRODUCTION

The defendant, Thamud Eldridge, is scheduled to be sentenced by this Court, on September 10, 2018 at 12:00 p.m., on his previous conviction, following a jury trial, as to: (1) Count 1 of the redacted superseding indictment (Dkt. No. 164) charging participation in the affairs of an enterprise through a pattern of racketeering activity in violation of Sections 1962(c) and 1963(a) of Title 18 of the United States Code; (2) Count 2 of the redacted superseding indictment charging conspiracy to participate in the affairs of an enterprise through a pattern of racketeering activity in violation of Sections 1962(d) and 1963(a) of Title 18 of the United States Code; (3) Count 3 of the redacted superseding indictment charging conspiracy to possess with intent to distribute, and to distribute, controlled substances in violation of Sections 846, 841(a)(1), 841(b)(1)(d), and 851 of Title 21 of the United States Code; (4) Count 4 of the redacted superseding indictment charging possession of a firearm in furtherance of a drug trafficking crime in violation of Sections 924(c)(1)(a)(i) and 2 of Title 18 of the United States Code; (5) Count 5 of the redacted superseding indictment charging

1

kidnaping in aid of racketeering in violation of Sections 1959(a)(1) and 2 of Title 18 of the United States Code; (6) Count 6 of the redacted superseding indictment charging Hobbs Act robbery in violation of Sections 1951(a) and 2 of Title 18 of the United States Code; and (7) Count 7 of the redacted superseding indictment charging possession and brandishment of a firearm in furtherance of violent crimes in violation of Sections 924(c)(1)(a)(ii) and 2 of Title 18 of the United States Code.

Both the Government and defense counsel have filed statements with respect to sentencing factors and sentencing memorandums. (Dkt. Nos. 750, 757, 780, 782) Defendant objects to a number of factual and legal findings in the Presentence Investigation Report ("PSR") (Dkt. No. 779). Below is the Court's ruling as to defendant's objections.

## **FACTUAL FINDINGS IN THE PSR**

With respect to the factual findings of the PSR, defendant objects to the inclusion of Paragraphs 26 through 46 in the Offense Conduct Section. Paragraphs 26 through 46 describe the government investigation, evidence and trial testimony related to the murder of Thedrus Laster a/k/a Flap on April 3, 2005 and the murder of Sam Jones, Jr. a/k/a Smokey on April 6, 2005. Defendant notes that he was acquitted as to Count 10 (Murder of Laster in Aid of Racketeering) and that the jury found, as to Count 1 Racketeering Act 5, that he did not intentionally cause the death of Laster. Defendant further states that the jury was unable to reach a verdict as to the remainder of Count 1 Racketeering Act 5 and Counts 11 and 12, which also relate to the attempted robbery

2

and murder of Laster. He notes that the jury was also unable to reach a verdict as to Count 1 Racketeering Act 6 and Counts 13 through 15, which relate to the attempted robbery and murder of Jones. Defendant argues that because he was either acquitted of these counts or the jury was unable to reach a unanimous verdict, information about these crimes should not be included in the Offense Conduct Section of the PSR.

Section 1B1.4 of the Sentencing Guidelines states that, pursuant to Section 3661 of Title 18 of the United States Code, "in determining the sentence to impose within the guideline range...the court may consider, without limitation, any information concerning the background, character and conduct of the defendant." The Supreme Court has noted that, "as a general proposition, a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Nichols v. United States*, 511 U.S. 738, 747 (1994). Also, a sentencing court is permitted to consider "hearsay evidence, evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in an acquittal." *United States v. Reese*, 33 F.3d 166, 174 (2d Cir. 1994).

Paragraph 5 of the PSR states that information in the Offense Conduct Section was obtained, by the Probation Officer, from the indictment, consultation with the Assistant United States Attorney, trial testimony and other investigative materials provided by the United States Attorney's office. Indeed, these paragraphs provide, *inter alia*, background information as to the conspiracy and crimes charged in this case,

3

information about the lengthy investigation of defendant and his co-conspirators, and a detailed description of much of the trial testimony. Because a sentencing court is permitted to undertake a broad inquiry as to the background, character and conduct of the defendant, all of the factual information contained in the Offense Conduct Section of the PSR was properly included. The Court notes that it will discuss separately how charges in the indictment for which the jury was unable to reach a unanimous verdict specifically affect defendant's guideline range calculations. However, all of this factual information was properly included in the Offense Conduct Section.

Thus, the Court adopts the facts contained in the PSR as its findings of fact.

**APPLICATION OF THE GUIDELINES**

Defendant was found guilty of Count 1 (Racketeering) which included a finding that he committed three racketeering acts; Count 2 (Conspiracy to Commit Racketeering) which included a finding that he committed three overt acts); Count 3 (Narcotics Conspiracy); Count 4 (Possession of a Firearm in Furtherance of Drug Trafficking); Count 5 (Kidnaping in Aid of Racketeering); Count 6 (Hobbs Act Robbery) and Count 7 (Possess and Brandish of a Firearm in Furtherance of Violent Crimes).

With respect to Counts 1 and 2, pursuant to Application Note 1 of Section 2E1.1, where there is more than one underlying offense, each underlying offense is treated as if it were contained in a separate count of conviction for the purposes of Section 2E1.1(a)(2) and requires a determination as to whether Subsection (a)(1) or (a)(2)

results in the greater offense level after considering Chapter 3, parts A, B, C, and D.

Here, each Racketeering Act is treated as a separate incident. Therefore, defendant's total offense level is determined by using the multi-count rules found in Guideline Section 3D1.4.

*Count Group 1: Racketeering Act 1 (Conspiracy to Distribute Controlled Substances)*

Pursuant to Guideline Section 3D1.2(d), Racketeering Act 1 of Count 1, Overt Act 1 of Count 2, and Count 3 are grouped for guideline calculation purposes, since the offense level is determined largely on the basis of the quantity of a substance involved. Pursuant to Section 3D1.3(b), the offense level applicable to a group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three of the Sentencing Guidelines.

*Count 1- Racketeering Act 1: Conspiracy to Distribute Controlled Substances*

*Count 2 - Overt Act 1: Conspiracy to Distribute Controlled Substances*

*Count 3 - Conspiracy to Possess with Intent to Distribute, and to Distribute, Controlled Substances*

For Count Group 1, the PSR recommends that defendant's base offense level under Guideline Sections 2D1.1(a)(5) and 2D1.1(c)(4) is 32 because the offense involved the equivalent of at least 3,000 kilograms but less than 10,000 kilograms of

marijuana. Defendant objects to the assessment of the amount of drugs involved. Defendant argues that the drug estimates are not accurate or supported by the record, and that a hearing is needed to determine the quantities of drugs involved.

The Court rejects these arguments and finds that a hearing is not needed. The drug amounts in the PSR are supported by the trial testimony of Jay Renfro, Henry Lloyd, Steve Martin, Woodie Johnson and Jerome Laster. According to Martin and Laster, the Montana Bridge Gang sold approximately five to ten pounds of marijuana per week from 1999 through 2005. Thus, over the duration of the drug conspiracy between 2003 through December 2005, the conspirators were involved in the distribution of approximately 780 to 1,560 pounds of marijuana. This is the equivalent of approximately 353.8 kilograms to 707.6 kilograms of marijuana. In addition, Martin testified that he observed co-conspirator Kevin Allen sell bundles of heroin on five occasions, for a total of approximately five grams during the time of the conspiracy. Renfro testified that he provided defendant with half a kilogram of cocaine base in 2003. Trial testimony indicated that on February 23, 2005, defendant, Allen and co-conspirator Kashika Speed abducted Woodie Johnson, a known drug dealer, and stole two kilograms of cocaine. Lloyd testified that in April 2003, Allen robbed him of an ounce of cocaine and $3,500 (the equivalent of approximately 3.5 ounces of cocaine base). There is also evidence in the record that in October of 2005, Allen, defendant and others robbed Lloyd of $21,000 (the equivalent of 10.5 ounces of cocaine) and 4.5 ounces of powder cocaine. These amounts of heroin, cocaine and cocaine base were converted to their marijuana equivalents pursuant to Guideline Section 2D1.1. The

6

amounts were then added to the 353.8 kilograms to 707.6 kilograms of marijuana distributed by conspirators, for a total of at least 3,000 but less than 10,000 kilograms of marijuana. For these reasons, the Court finds that the PSR correctly states that the instant offense involved at least 3,000 but less than 10,000 kilograms of marijuana.

For these reasons, the Court finds that the adjusted offense level as to Count Group 1 is correctly calculated at 32.

*Count Group 2: Racketeering Act 2 (Attempted Robbery at 87 Girard)*

Pursuant to Guideline Section 3D1.2(a), Racketeering Act *2* of Count 1, Overt Act 2 of Count 2 are grouped, since the counts involve the same victim and the same act. Pursuant to Section 3D1.3(a), the offense level applicable to a group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three of the Sentencing Guidelines, for the most serious count comprising the group.

*Count 1- Racketeering Act 2: Attempted Robbery at 87 Girard*
*Count 2 - Overt Act 2: Attempted Robbery at 87 Girard*

For Count Group 2, the PSR recommends that defendant's base offense level under Guideline Sections 2E1.1(a)(2) and 2B3.1(a) is 20.

The PSR also recommends a 5 level upward adjustment pursuant to Guideline Section 2B3.1(b)(2)(c) since the defendant brandished a firearm.  Defendant objects to this upward adjustment.  He argues that there was no direct testimony that a gun was brandished during the robbery.  The Court rejects this argument.  Alice Collins testified at trial that she left her apartment at 87 Girard Street on March 24, 2004 to do some shopping and returned to find her husband and three other acquaintances tied up with duct tape.  She testified that two black men, one light and shorter and the other dark and taller, had guns pointed at them.  Collins testified that the men told her to get down on the floor, at which time the front door made a cracking sound, and the men panicked and ran.  The Court finds by a preponderance of the evidence that a gun was brandished during the robbery at 87 Girard Street, and that the PSR correctly applied a five level upward adjustment pursuant to Guideline Section 2B3.1(b)(2)(C).

The PSR also recommends a 2 level upward adjustment pursuant to Guideline Section 2B3.1(4)(B) as persons were physically restrained during the robbery to facilitate the commission of the instant offense.  The PSR also recommends a 1 level upward adjustment pursuant to Guideline Section 2B3.1(b)(6) since the taking of a controlled substance was an objective of the robbery.

For these reasons, the Court finds that the adjusted offense level as to Count Group 2 is correctly calculated as 28.

### Count Group 3: Kidnaping of Woodie Johnson in Aid of Racketeering

Pursuant to Guideline Section 3D1.2(a), Racketeering Act 3 of Count 1, Overt Act 3 of Count 2, Count 5, and Count 6 are grouped for guideline calculation purposes, since the counts involved the same victim (Woodie Johnson) and the same transaction (robbery and kidnaping). Pursuant to Section 3D1.3(a), the offense level applicable to a group is the offense level determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three of the sentencing guidelines for the most serious count comprising the group. The most serious offense is kidnaping.

*Count 1: Racketeering Act 3 - Robbery and Kidnaping of Woodie Johnson*
*Count 2: Overt Act 3 - Robbery and Kidnaping of Woodie Johnson*
*Count 5: Kidnaping in Aid of Racketeering*
*Count 6: Hobbs Act Robbery*

The PSR recommends that defendant's base offense level under Guideline Sections 2A4.1(a) and 2E1.1(a)(2) is 32. Defendant initially objected to the calculation on the basis that the kidnaping was counted twice. However, the PSR was amended to reflect the correct base offense level of 32, such that the enhancement for the kidnaping was only applied once. This objection to the PSR has been resolved

For these reasons, the Court finds that the adjusted offense level as to Count

Group 3 is correctly calculated at level 32.

*Count Group 4: Murder and Conspiracy to Commit Robbery of Thedrus Laster*

Pursuant to Guideline Section 3D1.2(a), Racketeering Act 5 of Count 1 and Overt Act 5 of Count 2 are grouped for guideline calculation purposes since the counts involve the same victim and the same act. Pursuant to Section 3D1.3(a), the offense level applicable to a group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three of the Sentencing Guidelines, for the most serious count comprising the group.

*Count 1: Racketeering Act 5 - Murder and Conspiracy to Commit Robbery of Thedrus Laster*

*Count 2: Overt Act 5: Murder and Conspiracy to Commit Robbery of Thedrus Laster*

The presentence investigation report recommends that defendant's base offense level under Guideline Sections 2E1.1(a)(2) and 2A1.1(a) is 43. Thus, the PSR recommends an adjusted offense level for Count Group 4 of 43.

### Count Group 5: Murder and Conspiracy to Commit Robbery of Sam Jones, Jr.

Pursuant to Guideline Section 3D1.2(a), Racketeering Act 6 of Count 1 and Overt Act 6 of Count 2 are grouped for guideline calculation purposes since the counts involve the same victim and the same act. Pursuant to Section 3D1.3(a), the offense level applicable to a group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three of the sentencing guidelines, for the most serious count comprising the group.

*Count 1: Racketeering Act 6 - Murder and Conspiracy to Commit Robbery of Sam Jones*

*Count 2: Overt Act 6 - Murder and Conspiracy to Commit Robbery of Sam Jones*

The PSR recommends that defendant's base offense level under Guideline Sections 2E1.1(a)(2) and 2A1.1(a) is 43. Thus, the PSR recommends an adjusted offense level for Count Group 5 of 43.

Defendant argues that because he was either acquitted or the jury was unable to reach a unanimous verdict as to the counts and racketeering acts related to the attempted robberies and murders of Laster and Jones, his total offense level should be calculated without an adjustment based upon Racketeering Act 5 of Count 1 and Overt Act 5 of Count 2 (the murder and conspiracy to commit robbery of Laster) and without

an adjustment based upon Racketeering Act 6 of Count 1 and Overt Act 6 of Count 2 (the murder and conspiracy to commit robbery of Jones). The defendant further argues that if the Court were to consider the acquitted and hung counts, it should find the standard of proof is one of clear and convincing evidence. While defendant cites a Third Circuit case in support of his argument, the Court notes that the Second Circuit has repeatedly held that proof by a preponderance of the evidence is the applicable burden of proof when a sentencing judge is to assess disputed facts relevant to sentencing. *United States v. Vaughn*, 430 F.3d 519 (2d Cir. 2005); *United States v. Cordoba-Murgas*, 233 F.3d 704 (2d Cir. 2000). The Government contends that because there is evidence in the record to find, by a preponderance of the evidence, that defendant participated in the conspiracies to rob and murder Laster and Jones, the inclusion of Count Groups 4 and 5 is correct. Should the Court accept defendant's objections, Count Groups 4 and 5 would not factor into defendant's total offense level or sentencing calculation.

The applicable Guidelines as to Counts 4 and 7, which are not factored into the multi-count adjustment, are as follows.

*Count 4: Possession of Firearms in Furtherance of a Drug Trafficking Crime*

The United States Sentencing Commission Guideline for a violation of 18 U.S.C. § 924(c)(1) is found in Guideline Section 2K2.4(b). Pursuant to Section 2K2.4(b), if the

offense involved a firearm in furtherance of a drug trafficking crime, the guideline sentence is the minimum term of imprisonment required by statute and further, Chapters 3 and 4 shall not apply to this count of conviction. Pursuant to 18 U.S.C. §924(c)(1)(A)(i), the required minimum term of imprisonment is 5 years, which is to be served consecutive to the other counts of conviction.

*Count 7: Possess and Brandish of Firearm in Furtherance of Violent Crimes*

The United States Sentencing Commission Guideline for a violation of 18 U.S.C. § 924(c)(1) is found in Guideline Section 2K2.4(b). Pursuant to Section 2K2.4(b), if the offense involved a firearm during and in relation to crimes of violence, the guideline sentence is the minimum term of imprisonment required by statute and further, Chapters 3 and 4 shall not apply to this count of conviction. Pursuant to 18 U.S.C. §924(c)(1)(A)(ii) and §924(c)(1)(C)(i), the required minimum term of imprisonment in this case, which involves a second or subsequent conviction, is 25 years, is to be served consecutive to the other counts of conviction.

The Court will now calculate defendant's total offense level as to Counts 1, 2, 3, 5 and 6 using the multiple count adjustment pursuant to Guideline Section 3D1.4 and defendant's guideline range. The Court will calculate both the total offense level and the guideline range recommended by the PSR and endorsed by the Government, as well as the total offense level and applicable guideline range should defendant's objections be adopted.

Should the Court accept the calculations of the PSR and the position of the Government, the combined adjusted offense level, after the multiple count adjustment set forth in Section 3D1.4 is 45. This includes an adjusted offense level of 32 for Count Group 1, an adjusted offense level of 28 for Count Group 2, an adjusted offense level of 32 for Count Group 3, an adjusted offense level of 43 for Count Group 4, and an adjusted offense level of 43 for Count Group 5.

However, pursuant to Chapter 5, Part A, when the total offense level is calculated in excess of 43, which is the highest offense level in the Guidelines, the offense Level is 43. The PSR therefore recommends that the total offense level be calculated at Level 43 and that the criminal history category should be properly calculated as Category V. Defendant argues that his criminal history should be calculated as a Category IV. He notes that the criminal history section should be amended to reflect research studies that address the decreased likelihood of recidivism in older adults, that he has been in custody since December of 2005 and committed no crimes during this time, and that "the last ten years indicate the purpose of Guideline Section 4A1.1 is not applicable to [him]." However, the Court finds that, based upon defendant's prior record, the PSR correctly assigned defendant eleven criminal history points and correctly calculated his criminal history level to be Category V. There is no basis to alter this calculation because defendant has been incarcerated for the past thirteen years, his age, or recent research as to recidivism. In fact, it is noted that defendant's criminal history is egregious and contains numerous offenses involving drugs, violence and firearms.

With an offense level of 43 and a criminal history of category V, the recommended guideline range for Counts 1, 2, 3, 5 and 6 is life on each Count. However, pursuant to Sections 1963(a) and 1951(a) of Title 18 of the United States Code, the maximum terms of imprisonment for Counts 1, 2 and 6 is 240 months as to each count. Pursuant to Sections 841(b)(1)(d) and 851 of Title 21 of the United States Code, the maximum term of imprisonment as to Count 3 is 120 months. Taking into account the statutory maximums, the defendant's guideline range becomes 240 months as to each of Counts 1, 2 and 6 and 120 months as to Count 3. Defendant's guideline range as to Count 5, which has a statutory maximum of life, is life.

Should the Court accept the defendant's objections, the combined adjusted offense level set forth in Section 3D1.4, after the multiple count adjustment, is 35. This includes an adjusted offense level of 32 for Count Group 1, an adjusted offense level of 28 for Count Group 2, an adjusted offense level of 32 for Count Group 3, and a removal of Count Groups 4 and 5 entirely from the calculation. Defendant's criminal history category is properly calculated as Category V. With a total offense level of 35 and a criminal history Category of V, the guideline range for Counts 1, 2, 3, 5 and 6 is 262 to 327 months for each count. However, taking into account the statutory maximums just explained, defendant's guideline range becomes 240 months as to each of Counts 1, 2 and 6 and 120 months as to Count 3. With respect to Count 5, which has a statutory maximum of life, defendant's guideline range would be 262 to 327 months.

Thus, in light of the statutory maximums, defendant has the same guideline

range as to Counts 1, 2, 3 and 6 regardless of whether the Court adopts the calculations set forth in the PSR and endorsed by the Government or whether the Court accepts defendant's objections and does not consider conduct for which the jury was unable to reach a verdict. The Second Circuit has held that "disputes about the applicable guidelines need not be resolved where the sentence falls within either of two arguably applicable guideline ranges and the same sentence would have been imposed under either guideline range." *United States v. Bermingham*, 855 F.2d 925 (2d Cir. 1988). *See also United States v. Borrego*, 388 F.3d 66 (2d Cir. 2004) (sentence of 240 months imprisonment affirmed where sentencing judge could have imposed a sentence of 240 months imprisonment regardless of the outcome of the disputed sentencing issues, and made clear that the sentence would have been the same regardless). Thus, the Court need not resolve the dispute as it relates to Counts 1, 2, 3 and 6.

Count 5 differs because the statutory maximum is life. Thus, should the Court accept the calculations of the PSR and the position of the Government, defendant's guideline range as to Count 5 is life. Should the Court accept defendant's objections, defendant's guideline range as to Count 5 is 262 to 327 months. The Court recognizes that in most circumstances, it should "begin all sentencing proceedings by correctly calculating the applicable guideline range." *Gall v. United States*, 552 U.S. 38, 49 (2007). However, the Second Circuit has recognized an exception where a "precise calculation of the applicable guidelines range may not be necessary in making a sentence determination...where...either of two guideline ranges, whether or not adjacent, is applicable, but the sentencing judge, having complied with section 3553(a),

makes a decision to impose a non-guidelines sentence, regardless of which of the two ranges applies." *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005). This exception allows the Court to "simply look at all of the facts, take both suggestions into account, consider the Section 3553(a) factors, and come up with a hybrid approach if he so chooses." *United States v. Dhafir*, 577 F.3d 411, 415 (2d Cir. 2009). The Second Circuit has noted that "this leeway...should be useful to sentencing judges in some cases to avoid the need to resolve all of the factual issues necessary to make precise determinations of some complicated matters." *See Crosby*, 397 F.3d at 112.

The Court finds that this exception applies here. Taking into account the total sentence to be imposed, the Court recognizes that regardless of the sentence it will impose on Counts 1, 2, 3, 5, and 6, the Court must, pursuant to Section 924(c)(1)(A)(I) of Title 18 of the United States Code, impose a minimum sentence of 60 months as to Count 4. Likewise, it must, pursuant to Sections 924(c)(1)(A)(ii) and 924(c)(1)(C)(I) of Title 18 of the United States Code, impose a minimum sentence of 300 months as to Count 7. By law, the minimum sentences as to Count 4 and Count 7 must run consecutively to each other and to all other counts of conviction. In light of the aggregate sentence that will be imposed here and after considering all of the factors set forth in Section 3553(a), the Court finds that it reasonable, sufficient, and not greater than necessary, to impose a non-guideline sentence as to Count 5. In light of this determination, the Court finds that it is not necessary for it to make a determination as to which guideline range applies to Count 5. Thus, it is not necessary for the Court to make a finding as to whether it has been proven, by a preponderance of the evidence,

17

that defendant conspired to rob and murder Thedrus Laster and Sam Jones.

## CONCLUSION

The Court's rulings as to the applicable sentencing guidelines and defendant's objections are set forth herein and will be restated on the record at the time of defendant's sentencing on September 10, 2018.  The Court will impose sentence at that time, after it has heard from the Government, defense counsel and defendant.  The Court notes that in making the determinations set forth herein, it has considered all of the filings and arguments by both the Government and defendant and that no further filings as to the objections are needed.

IT IS SO ORDERED.

    *Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   September 4, 2018